GIRARDI | KEESE
THOMAS V. GIRARDI, State Bar No. 36603
tgirardi@girardikeese.com
ALEXANDRA T. STEELE, State Bar No. 291399
asteele@girardikeese.com
JOE FINNERTY, State Bar No. 298678
jfinnerty@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

Attorneys for Plaintiff and the Putative Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Allison C. Steele, on behalf of herself and all others similarly situated, | Case No. 2:15-cv-07391 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| Volkswagen Group of America, Inc., a New Jersey Corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Allison C. Steele ("Plaintiff"), individually and on behalf of all others similarly situated ("the Class" and the "California Subclass"), alleges the following:

## I.    FACTUAL ALLEGATIONS

1. On September 18, 2015, the Environmental Protection Agency ("EPA") issued a Notice of Violation ("NOV") of the Clean Air Act to Defendant Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"). The EPA's NOV states that Volkswagen's diesel cars from model years 2009-2015 include a software that circumvents EPA standards testing ("defeat device").

2. As detailed in the EPA's Notice of Violation ("NOV"), the software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States uses a defeat device to detect when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. When not undergoing testing, at all other times that the vehicle is running, the emissions controls are disabled. This results in cars that meet emissions standards only in the laboratory or state testing stations. However, during normal operation, the vehicles emit nitrogen oxides ("NOx") at up to **40 times** the standard allowed under United States and California laws and regulations.

3. In fact, Volkswagen itself admitted to the EPA and the California Air Resources Board ("CARB") in a meeting on September 3, 2015, that "these vehicles were designed and manufactured with a defeat device to bypass, defeat, or render inoperative elements of the vehicles' emission control system."[1]

4. The EPA's Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance, declared that "using a defeat device in cars to evade clean air standards is illegal and a threat to public health." The Clean Air Act specifically prohibits the manufacture, selling, or installation of any device that bypasses, defeats, or renders inoperative a required element of the

---

[1] September 18, 2015 California Air Resources Board letter to Volkswagen Group of America.

vehicle's emissions control system. Section 203 (a)(3)(b) of the Clean Air Act (CAA); 42 U.S.C. Sec. 7522(a)(3)(b). Defendant's defeat device is the exact type of device the Clean Air Act is designed to protect against.

5. The Environmental Protection Agency, and the State of California have set and enforced standards to protect the quality of the air United States and California citizens breathe. In particular, these standards are developed to protect the public from exposure to damaging chemicals known to cause disease in humans. Automobile manufacturers must abide by these US and California laws and EPA rules and regulations.

6. Defendant intentionally violated federal and California law and EPA standards by outfitting and selling Volkswagen Jetta, Bettle, Golf, Passat and Audi A3 diesel vehicles equipped with the illegal defeat device from 2009 to 2015 ("Affected Vehicles").

7. Even more egregious, having purposefully designed and manufactured a device to cheat the emissions testing, Defendant lied to the consuming public, promoting its vehicles as "Clean" alternatives. Unbeknownst to purchasers of Defendant's Volkswagens and Audis, each operation of the vehicle was in itself a violation of federal and state emission standards, contributing NOx at a rate of up to 40 times the amount permitted by US and California emissions standards. Not only does this type of emission contribute to the destruction of the ozone layer, but it seriously impacts human health, causing respiratory illness, asthma, and premature death. Defendant is not only cheating consumer, but the public as a whole.

8. The EPA and CARB discovered the defeat device software during the course of a probe aimed at uncovering the use of such cheat devices. Researchers at West Virginia University and the International Council on Clean Transportation developed a test routine to uncover frauds such as the one Defendant designed and implemented.

9. According the EPA, the Affected Vehicles are massive in number, including
approximately
482,000 diesel passenger cars sold in the United States since 2008. The affected diesel model vehicles include the following:

- Jetta Model Years 2009-2015

- Beetle Model Years 2009-2015
- Audi A3 Model Years 2009-2015
- Golf Model Years 2009-2015
- Passat Model Years 2014-2015

10. Consumers, including Plaintiff and Class Members, paid substantial premiums for their Volkswagen and Audi vehicles. Specifically, consumers sought out "clean" alternatives to the traditional gas powered vehicle. Alarmingly, Defendant further perpetrated its deception on Plaintiff and Class Members by promoting its vehicles as "Clean Diesel" options for those interested in fuel economy and preserving the environment.

11. Defendant charged an additional premium price for the "Clean Diesel" option on each of its Affected Vehicles, ranging between $2,000 and $6,800 per premium with the Volkswagen Passat Premium topping out at $6,800.

12. The EPA ordered Defendant to recall Affected Vehicles and to provide consumers with a fix to ensure compliance with federal and State emissions standards at all times, not simply during testing procedures. On September 20, 2015, Defendants announced that it would halt all sales of the Plaintiff and Class Members will suffer substantial damage as a result of the Defendant's deception, as Affected Vehicles will not preform as promised or as they did when initially purchased. Any such fix will result in the reduction of horsepower, fuel economy and overall efficiency. Further, Plaintiff and Class Members, from now until the time the vehicle is recalled and "fixed," Plaintiff and Class Members are stuck with a vehicle that violates federal and California emission standards each time it is driven. Thus, Plaintiff and Class Members' Affected Vehicles will suffer a serious diminution of value both instantaneously and in the future, additional fuel costs, and in the inability to sell an their Affected Vehicles until the recall has completed.

13. Due to Defendant's intentional, unfair, deceptive and fraudulent conduct, Plaintiff and Class Members have suffered losses in money and property. If Plaintiff and Class Members had known of Defendant's deception, Plaintiff and Class Members would have forgone purchasing the Affected Vehicles or paid a substantially lower price.

CLASS ACTION COMPLAINT

14. Defendant's deception was such that Plaintiff and Class Members had no way of knowing that the alleged Clean Diesel vehicle was anything but "clean." It was not until the CARB and the EPA took investigatory action that Defendant's deception was revealed. In fact, it took sophisticated laboratory testing, special equipment, and open road testing using portable equipment for Defendant's fraud to be revealed. It is clear that Defendant's deception was a purposefully, well-planned scheme to deceive federal and state regulators as well as the consuming public, including Plaintiff and Class Members.

15. It was not until September 18, 2015, when then EPA issued its notice of violation, that Plaintiff and Class Members could reasonably have discovered Defendant's illegal scheme whereby it concealed the implementation of the defeat devices and misrepresentations regarding the affected vehicle's true performance.

16. Plaintiff and Class Members did not and could not have discovered, through the exercise of reasonable diligence, facts that would allow for the discovery of Defendant's illegal scheme until Friday, September 18, 2015, when the EPA issued the NOV to the general public. Given that Defendant actively designed and perpetrated this scheme and encouraged its employees and agents to refrain from disclosing pertinent facts regarding the deception and/or to actively conceal Defendant's illegal defeat device scheme and the true amount of NOx emitted from the Affected Vehicles, Plaintiff and Class Members had no way of knowing of Defendant's failures.

17. Defendant's concealment was knowing, intentional and active throughout at least the 2009 to 2015 time period. Defendant used its reputation as a respected manufacturer to pull the wool over the consuming public's eyes, including Plaintiff and Class Members. Defendant intentionally covered up and failed to disclose that the Affected Vehicles were outfitted with the defeat device and that without the defeat device, the Affected Vehicles were in violation of federal and state emissions standards and would suffer from sub-optimal performance. Defendant intentionally and falsely represented to Plaintiff and Class Members that the Affected Vehicles complied with and even surpassed federal and state emissions standards, labeling its vehicles "Clean Diesel" or "TDI Clean."

18. Defendant had a continuing duty to disclose to Plaintiff and Class Members the true

CLASS ACTION COMPLAINT

character, quality, and amount of emissions from the Affected Vehicles.  The continuing duty also applied to compliance with federal and state emissions standards.

19. Defendant's deceit was active, knowing, and affirmative – concealing both the defeat device, the true performance of the vehicle when the defeat device was not employed, and level of emissions the Affected Vehicles would emit during normal operation.

20. Based on the foregoing, any potential statutory limit is tolled by virtue of the discovery rule, Defendant's fraudulent concealment, and equitable estoppel.

21. Plaintiff brings this action individually and behalf of other similarly situated current and former owners and/or lessees of the Affected Vehicles.

## II.      THE PARTIES

22. Plaintiff Allison C. Steele is an individual residing in Santa Monica, California. Plaintiff, in search of a new vehicle, sought a car that could provide both good gas mileage, solid engine performance, and that was environmentally conscious. Plaintiff viewed television advertisements, visited multiple websites, read reviews of the Audi Clean Diesel A3, spoke to sales representatives at Santa Monica Audi, and reviewed the Audi A3 webpage. In each of these places Audi uniformly touted its A3 as a "Clean Diesel" alternative with excellent gas mileage and power/performance of its engine system. In fact, Plaintiff and Class Members also viewed awards given by Insurance Institute of Highway Safety, and Motor Trends, commending the "Clean Diesel" affected vehicle for its outstanding performance and safety features. Plaintiff reviewed Defendant's blanket and uniform representations that the Audi A3 was a Clean Diesel Vehicle. None of the advertisements, specs, awards, or reviews provided any disclosure of the "defeat device" or that Defendant had purposefully falsified its certification of EPA compliance. No agent or salesman of Defendant told Plaintiff of the existence of the defeat device and/or the defective condition of the vehicle when the defeat device is not in use.

23.  In reliance on the representations, Defendant uniformly disseminated to the  consuming public, in January 2015, Plaintiff purchased a new 2015 Audi A3 diesel vehicle from Santa Monica Audi, an authorized Audi dealership in Santa Monica, California.

24. Had Defendant disclosed the true character of the alleged "Clean Diesel" vehicle, including

the fact that Audi used a defeat device to foil emissions tests and that the vehicle, during normal use, would emit 10 to 40 times the amount of NOx than that permitted by Federal and California law, Plaintiff would not have purchased the vehicle, or would have paid less for the vehicle.

25. Plaintiff has suffered an ascertainable loss as a result of Defendant's failures, omissions, misrepresentations, and intentional fraudulent concealment of the true nature of the Affected Vehicles sold to the Plaintiff and Class Members. These losses include but are not limited to diminished value of the vehicle, out-of-pocket loss, future attempted repairs, future additional fuel costs, and future lowered performance of the affected vehicle.

26. Defendant Volkswagen Group of America is a corporation doing business in all 50 states, including California, and is organized under the laws of the State of New Jersey. Defendant's principal place of business is located in Herndon, Virginia. At all times relevant to the this cause of action, Defendant manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Audi and Volkswagen brand throughout the United States, including California. Defendant and/or its agents designed, manufactured and installed the defeat devices on alleged "Clean Diesel" engines in the Affected Vehicles. Defendant and its representatives also developed, disseminated the Affected Vehicles specs and advertisements for the consuming public as well as owner's manuals, warranty booklets, and other promotional materials for the Affected Vehicles.

### III.     JURISDICTION

27.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (d), the Class Action Fairness Act of 2005, because the proposed Class consists of more than 100 members; the amount in controversy exceeds the jurisdictional requirement of $5,000,000 exclusive of costs and interest; and diversity exists. The Court may also exercise supplemental jurisdiction over Plaintiff's and Class Member's state law claims pursuant to 28 U.S.C. § 1367.

28.  Venue is proper in the Central District of California because a substantial part of the events, misrepresentations, and/or omissions that give rise to Plaintiff's and Class Member's claims took place in this District, including but not limited to the marketing, advertisement, sale and/or

lease of the Affected Vehicles to Plaintiff and Class Members.  Further, Plaintiff resides and

purchased the affected vehicle in this District.

## IV.    CLASS ACTION ALLEGATIONS

29.  Plaintiff brings this action on behalf of herself and pursuant to the Federal Rules of Civil

Procedure Rule 23(a), (b)(2), and (b)(3) and on behalf of the following class(es) of persons:

**The Class:**
All persons, including individual, non-corporate entities, or corporations, where ever
organized or existing in the United States who are former or current owners of an Affected
Vehicle. Affected Vehicles include, without limitation:

- Jetta Model Years 2009-2015

- Beetle Model Years 2009-2015

- Audi A3 Model Years 2009-2015

- Golf Model Years 2009-2015

- Passat Model Years 2014-2015

**The California Subclass:**
All persons, including individual, non-corporate entities, or corporations, where ever
organized or existing in California who are former or current owners of an Affected
Vehicle. Affected Vehicles include, without limitation:

- Jetta Model Years 2009-2015

- Beetle Model Years 2009-2015

- Audi A3 Model Years 2009-2015

- Golf Model Years 2009-2015

- Passat Model Years 2014-2015

30. This action is properly maintained as a class action because Plaintiff can prove the

elements of each claim on a class-wide basis, using the same evidence that Plaintiff would use to

maintain and prove and individual action. Thus, the action may be properly maintained on behalf

of each of the proposed Classes pursuant to FRCP 23.

31. The Class is so numerous that joinder of all members would be impracticable. The  precise

number of Class Members is unknown at this time. However, based on information and belief, the Class and Subclass is made up of hundreds of thousands of members evidence by the EPA's estimate that there are at least 482,000 Affected Vehicles nationwide and in California.

32. Questions of law and fact common to the Members of the Class predominate over any questions affecting any individual member, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

33. Common questions of law and fact include but are not limited to:

    a.    Whether the Affected Vehicles contain a defeat device to cheat federal and California emissions standards;

    b.    Whether the defeat device complies with federal and state emissions regulations;

    c.    Whether Defendant designed, manufactured, produced, marketed, distributed, sold, lease or otherwise put the Affected Vehicles equipped with the defeat device into the stream of commerce;

    d.    Whether Defendant's acts, omissions, concealment and fraud in installing the defeat device degrades the value of the Affected Vehicles in the interim period while Plaintiff and Class Members are forced to wait for the promised "recall" and "fix";

    e.    Whether there is a "fix" that can restore Affected Vehicles engines such that the Affected Vehicles both meet federal and state emissions standards;

    f.    Whether the Affected Vehicles, once "fixed", are substantially downgraded in both engine performance and fuel economy;

    g.    Whether the Affected Vehicles, once "fixed," are environmentally compliant such as to qualify as "Clean Diesel" as otherwise promised by Defendant;

    h.    Whether the affected Defendant's fraudulent scheme diminished the value of the Affected Vehicles;

    i.    Whether Defendant knowingly and intentionally designed, manufactured, implemented and distributed the Affected Vehicles to the consuming public, including Plaintiff and Class Members;

j.      Whether Defendant's conduct violates federal and state consumer protection statutes, contract, and warranty laws;

k.      Whether Plaintiff and Class members were unfairly charged and paid a premium for their "Clean Diesel" vehicles;

l.      Whether Plaintiff and Class members are entitled to relief, including but not limited to equitable, injunctive, and restitution; and

m.      Whether Plaintiff and Class Members are entitled to damages, including punitive and other monetary relief.

34.  Plaintiff's claims are typical of Class Member's claims because Class Members were comparably injured through Defendant's illegal and wrongful conduct as described herein.

35. Plaintiff is an adequate Class Representative because Plaintiff is committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same non-conflicting interests as the other members of the Class. The interests of the Class and Subclass would be fairly and adequately represented by Plaintiff and her counsel.

36. Class treatment is superior to any other available means of prosecution of fair and efficient adjudication of this controversy. There are no unusual difficulties that are likely to arise in the management of this action. The damages and other financial detriment suffered by Plaintiff and Class Members is small compared to the burden and expense of prosecuting each action individually. Thus, it would be impracticable for Plaintiff and Class Members to bring individual actions against Defendant for its wrongful and illegal conduct. Further, class treatment benefits the courts. Individualized litigation promises inconsistent or contradictory judgments, unnecessary overlap of resources, and increases the delay and expense to all those accessing the courts. Class treatment brings with it the benefit of a single adjudication, the supervision of a single court, and the consolidation of the courts' and the parties' resources.

37. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant or which would, as a practical

matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. Defendant has acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and California Subclass. Therefore, preliminary and final injunctive relief and damages for Defendant's illegal conduct is appropriate.

## V.     FIRST CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE CLASS AND SUBCLASS

### Breach of Contract

38. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Each and every sale/lease of an affected vehicle equipped with a defeat device to unsuspecting Plaintiff and Class Members constitutes a breach of contract. Defendant, through its advertisements, website, promotional, informational material containing the specs on its alleged Clean Diesel Vehicles, and representation of its salesman and agents, was a promise to the consuming public that the Affected Vehicles were designed and manufactured so as to consist of and live up to the stated promises, including fuel efficiency, engine performance, and environmental safety.

39. Plaintiff and Class Members were promised a Clean Diesel vehicle that complied with state and federal regulations, that had a high performing engine and superior fuel economy. However, Defendant breached its contracts with Plaintiff and Class Members by failing to provide the promised product and instead delivering the Affected Vehicles equipped with a defeat device. Accordingly, Plaintiff and Class Members over paid for their Affected Vehicles and did not receive the benefit of their bargain.

40. Defendant's misrepresentation and failure to disclose the existence and effect of the defeat device caused Plaintiff and Class Members to purchase the Affected Vehicles. Without the widespread and uniform dissemination of the false promise described herein, Plaintiff and Class Members would not have purchased their Affected Vehicles, and certainly not at a premium. Plaintiff and Class Members would have purchased less expensive alternative vehicles had Defendant and its agents not made consistent and widespread claims of Clean Diesel and superior

1  performance.

2    41. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the

3  California Subclass have been damaged in an amount to be proven at trial, which shall include, but

4  is not limited to, all compensatory damages, incidental and consequential damages, and other

5  damages allowed by law.

6  **VI.    SECOND CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE**

7  **CLASS and SUBCLASS**

8  **Violation Of Song-Beverly Consumer Warranty Act -**

9  **Breach Of Implied Warranty Of Merchantability**

10  **(Cal. Civ. Code §§ 1791.1 & 1792)**

11    42. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

12    43. Plaintiff and Class Members who purchased or leased the Affected Vehicles in

13  California are "buyers" within the meaning of Cal. Civ. Code § 1791(b). The Affected Vehicles

14  are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a). Volkswagen is a

15  "manufacturer" of the Affected Vehicles within the meaning of Cal. Civ. Code § 1791(j).

16    44. Volkswagen impliedly warranted to Plaintiff and Class Members that its Affected Vehicles

17  were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792. However, the

18  Affected Vehicles do not have the quality that a buyer would reasonably expect. Cal. Civ. Code §

19  1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are

20  merchantable" means that the consumer goods meet each of the following:

21           (1) Pass without objection in the trade under the contract description;

22           (2) Are fit for the ordinary purposes for which such goods are used;

23           (3) Are adequately contained, packaged, and labeled;

24           (4) Conform to the promises or affirmations of fact made on the container or label.

25    45. The Affected Vehicles do not pass without objection in the automotive trade because of

26  they do not pass EPA and state law emissions regulations.

27    46. The "defeat device" illegally installed falsely causes Affected Vehicles to obtain EPA

28  certification and pass emissions tests when in fact they omit up to 40 times the permitted level of

1  NOx. The Affected Vehicles are not safe to drive and not fit for ordinary purposes.

2      47. The Affected Vehicles are not adequately labeled because Defendant's labeling claims that

3  the  Affected Vehicles conform to federal and state emissions regulations, are fuel efficient "Clean

4  Diesel" vehicles. In fact, Defendant's labeling of the Affected Vehicles fails to disclose the "defeat

5  device" that causes emissions systems of the Affected Vehicles to become inoperative during

6  normal use.

7      48. Defendant breached the implied warranty of merchantability by manufacturing and

8  selling Affected Vehicles containing the "defeat device." Furthermore, Volkswagen's fraudulent

9  use of the "defeat device" has deprived Plaintiff and Class Members of the benefit of their bargain.

10  The defeat device installed in Affected Vehicles substantially reduces the present value of the cars,

11  now and in the future.

12      49. As a direct and proximate result of Volkswagen's breach of the implied warranty of

13  merchantability, Plaintiff and Class Members received goods whose dangerous and dysfunctional

14  condition substantially impairs their value to Plaintiff and Class Members.

15      50. Plaintiff and Class Members have been damaged as a result of the diminished value of

16  Volkswagen's products, the products' malfunctioning, and the potential nonuse of their Affected

17  Vehicles.

18      51. Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and Class Members are entitled

19  to damages and other legal and equitable relief including, at their election, the purchase price of

20  their Affected Vehicles, the over paid premium for their vehicles, and/or the diminution in value

21  of their Affected Vehicles.

22      **VII.**    **THIRD CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE**

23      **CLASS and SUBCLASS**

24      **Breach Of Implied Warranty Of Merchantability**

25      **(California Commercial Code § 2314)**

26      46. Plaintiff incorporates by reference all preceding allegations as though fully set forth

27  herein. Volkswagen is and was at all relevant times a merchant with respect to motor vehicles

28  under the California Commercial Code § 2104.

47. A warranty that the Affected Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

48. These Affected Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Affected Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative. Further, the Clean Diesel engine system was not adequately designed, manufactured, and tested.

49. Defendant was provided notice of these issues by the investigations of the EPA and California state regulator, CARB. Plaintiff and Class Members have had sufficient direct dealings with either Defendant or their agents (dealerships) to establish privity of contract between Plaintiff and Class Members. Notwithstanding this, privity is not required in this case because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Defendant and its dealers. Plaintiff and Class Members are the intended beneficiaries of Defendant's implied warranties.

50. The dealers of Defendant's Affected Vehicles were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and Class Members' Affected Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

51. As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## VIII.   FOURTH CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE CLASS and SUBCLASS

### Violation Of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, Et Seq.)

52. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

53. Defendant's conduct, as described herein, was and is in violation of the UCL. First, Defendant's conduct violates the UCL by knowingly and intentionally concealing from Plaintiff and Class Members that the Affected Vehicles contain the defeat device that is in effect a design defect while at the same time obtaining money from Plaintiff and the Class. Second, Defendant's conduct violates the UCL by marketing Affected Vehicles as fuel efficient, Clean Diesel, regulation compliant engine systems. Third, Defendant violates the UCL by  purposefully installing an illegal "defeat device" in the Affected Vehicles to fraudulently obtain EPA certification and cause Affected Vehicles to pass emissions tests when in truth not only do they not pass, the violate emissions standard by 10 to 40 times the amount of NOx emissions permitted by law. Fourth, Defendant is in violation of federal laws, including the Clean Air Act. Finally, Defendant's conduct designing, manufacturing, and selling the Affected Vehicles violates the UCL and California laws, including California laws governing vehicle emissions and emission testing requirements.

54. Defendant's misrepresentations and omissions alleged herein caused Plaintiff and California Subclass Members to purchase or lease their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and California Subclass Members would not have purchased or leased the Affected Vehicles. Plaintiff and California Subclass Members certainly would not have purchased or leased these Affected Vehicles at the prices they paid. If Defendant had not have deliberately omitted key information regarding the defeat devices and the true nature of the affected vehicle's engines and performance ability, Plaintiff and California Subclass Members would have purchased or leased less expensive alternative vehicles.

55. Accordingly, Plaintiff and California Subclass Members have suffered injury in fact including lost money or property as a result of Defendant's misrepresentations and omissions.

56. Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under Cal. Bus. & Prof. Code § 17200. Plaintiff requests that the Court enter such

orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or fraudulent practices, allow rescission, and restore to Plaintiff and Class Members any money it acquired by unfair competition, including restitution and/or disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345.

## IX.   FIFTH CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE CLASS and SUBCLASS

### Violation Of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, Et Seq.)

57. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

58. The Affected Vehicles sold and leased by Defendant are "goods" as defined in Cal. Civ. Code § 1761(a). Plaintiff and California Subclass Members are "consumers" as defined in Cal. Civ. Code § 1761(d). Plaintiff, California Subclass Members, and Defendant are "persons" as defined in Cal. Civ. Code § 1761(c).

59. As alleged above, Defendant made numerous misrepresentations concerning the benefits, efficiency, performance and safety features, including that its vehicles were "Clean Diesel" environmentally friendly vehicles. Due to Defendant's conduct, clearly Defendant's claims were misleading.

60. In purchasing or leasing the Affected Vehicles, Plaintiff and California Subclass Members were deceived by Volkswagen's failure to disclose that the Affected Vehicles were equipped with defeat devices, rendering the engine system defective and that did not live up to federal and California emissions standards.

61. Defendant's conduct, was and is in violation of the CLRA. Volkswagen's conduct violates at least the following CLRA provisions:

    i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics,

uses, and benefits that they do not have;

ii.   Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

iii.  Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

iv.   Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

62. Plaintiff and California Subclass Members have suffered injury in fact and actual damages resulting from Defendant's material omissions and misrepresentations because they paid an inflated premium purchase or lease price for the Affected Vehicles. Further Plaintiff and Class Members suffered injury in fact and actual damages because, after the alleged recall and fix, Plaintiff and Class Members will pay additional fuel costs if and when their Affected Vehicles are fixed to comply with emissions standards.

63. Defendant knew, should have known of the defective design and manufacture of the Affected Vehicles were not suitable for their intended use.

64. Defendant concealed material facts from Plaintiff and California Subclass Members because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles. Had Plaintiff and California Subclass Members known about the defeat device in the Affected Vehicles, they would not have purchased or leased the Affected Vehicles or would not have paid premium prices for their vehicles.

65. Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). The notice was sent to Volkswagen on September 21, 2015.

66. Plaintiff's and California Subclass Members' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices. Plaintiff and California Subclass Members are entitled to equitable and monetary relief under the CLRA.

///

///

///

CLASS ACTION COMPLAINT

## X.     SIXTH CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE CLASS and SUBCLASS

### Violation Of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, Et Seq.)

67. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

68. Defendant disseminated with its advertising, marketing, promotional and informational materials, websites, statements, agents and representatives throughout California and the United States, misleading, untrue and false statements. Defendant knew or should have known through the exercise of reasonable diligence in the running of its business that the statements made and disseminated were untrue and misleading to the consuming public, including Plaintiff and Class Members.

69. Defendant's misrepresentations and omissions regarding the environmental safety, reliability, and functionality of Affected Vehicles were material and likely to deceive a reasonable consumer, including Plaintiff and Class Members.

70. Plaintiff and Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

71. Plaintiff and Class Members relied on Defendant's misrepresentation and omissions regarding the Affected Vehicles being outfitted with defeat devices, safety, performance, and reliability of the Affected Vehicles. Defendant's represented that its Affected Vehicles sold at a premium price were Clean Diesel vehicles. Had Plaintiff and Class Members known of the defeat device, they would not have purchased or leased their Affected Vehicles and/or paid a premium

for the affected vehicle. Very simply, Plaintiff and Class Members were cheated out of the benefit of the bargain and paid too much for their defective vehicles.

72. Defendant's wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide in the course of its business.

73. Plaintiff, individually and on behalf of Class Members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing to perpetuate their unfair, unlawful, and/or deceptive practices. Plaintiff requests that the Court restore to Plaintiff and Class Members any money Defendant acquired by unfair competition, including restitution and/or disgorgement and for any other relief that the Court deems appropriate.

## XI.     SEVENTH CAUSE OF ACTION, INDIVIDUALLY AND ON BEHALF OF THE CLASS and SUBCLASS

### Fraudulent Concealment

74. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

75. Volkswagen intentionally concealed material facts concerning the quality and performance of the Affected Vehicles. As alleged in this complaint, Defendant created a plan to defeat federal and state emissions standards and persuade Plaintiff, Class Members, and the consuming public that its affected vehicle were "Clean," fuel efficient, with optimal performance. Defendant designed, manufactured, and implemented a defeat device to carry out its nationwide deception. Defendant intentionally and uniformly marketed the Affected Vehicles with a misleading misnomer: "Clean Diesel" or "TDI Clean."

76. The defeat device was designed to function only during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of contrived false emissions figures. According to the EPA NOV's, Defendant's scheme to defraud federal and state regulators and the consuming public results in emissions that is 10 to 40 times in excess federal and state law.

77. Plaintiff and Class Members, including California Subclass Members, reasonably relied upon Volkswagen's false representations as the information provided to the public on Defendant's vehicles was always the same: that the Diesel option was a clean alternative, promising excellent gas mileage, and impressive engine performance. Plaintiff and Class Members had no way of knowing that Volkswagen's representations were false and dangerously misleading.

78. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and California Subclass members did not, and could not, uncover Volkswagen's deception on their own. Volkswagen concealed and suppressed material facts concerning Defendant's true approach to business, placing profits and sales above compliance with federal and state clean, the public's safety, and the trust of its consumers at any cost. As one consumer quoted in the LA Times on September 15, 2015 stated "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars. I don't want to be spewing noxious gases into the environment."

79. Further, Defendant ensure that its employees did not reveal the details of its illegal scheme to regulators or consumers, including Plaintiff and Class Members. Defendant's lies served to cover up the true nature of the affected cars performance in terms of fuel economy and emissions standards and to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, that Volkswagen is a reputable and conscious  manufacturer that complies with applicable law, including federal and state clean air and emissions regulations.

80.  Defendant's misrepresentations were material to Plaintiff, Class Members and the consuming public. Plaintiff and Class Members considered the "Clean Diesel" representation in purchasing or leasing the vehicles. Defendant's representation that the vehicle was Clean Diesel and that the Affected Vehicles complied with federal and state regulations played a significant role in the value of the vehicles – both in terms of premium charged at the outset, the cost of operating the vehicle on a daily basis, and its future resale value. Plaintiff and Class Member's relied upon Defendant's misrepresentations and omissions in deciding to buy their Affected Vehicles. Had Plaintiff and Class Members known of Defendant's deception, they would have not paid the

premiums for the Affected Vehicles or they would have forgone purchasing the vehicles all together.

81. Defendant knew that Plaintiff, Class Members and the consuming public would pay for a vehicle that not only complied with federal and state emissions standards, but that was "clean" and environmentally conscious. An added and compelling factor to Plaintiff and Class Members was that Defendant also promised excellent engine performance, unlike that of its competitor hybrids that lacked the same torque. Thus, Plaintiffs and Class Members paid a premium for these Affected Vehicles.

82. Volkswagen had a duty to disclose the implementation of the defeat device's placement in the Affected Vehicles because knowledge of the scheme and its details were only to Defendant. Defendant exclusively held knowledge and information regarding its deceptive scheme. The facts of Defendant's secret scheme were not known to Plaintiff and Class Members and Plaintiff and Class Members, by virtue of simply being part of the consuming public, were not in a position to discover the truth about the Affected Vehicles.

83. Defendant's duty to disclose this material information to Plaintiff and Class Members arises because, as part of its business, Defendant made general affirmative representations about the qualities of its vehicles claiming that they are "Clean Diesel" cars. This representation is incomplete, misleading and deceptive without also disclosing the existence of the defeat device, the true nature of the affected vehicle's performance when not under testing conditions, and the true nature of the engine and performance of the Affected Vehicles. Defendant, having provided information with regard to its vehicles, had a duty to disclose to Plaintiff and Class Members *all* facts regarding the true nature of the Affected Vehicles, not only selective and convenient information.

84. Defendant actively concealed these material facts to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions. In order to protect its reputation and line its pockets, Defendant created an elaborate and uniform scheme at the expense of Plaintiff, Class Members and the health of the public and the environment.

85. While Defendant has issued an apology to the public, it still not made full and adequate disclosures, and continues to defraud Plaintiff and California Subclass members by concealing material information regarding the Affected Vehicles and its emissions scheme.

86.  Defendant's uniform and widespread misrepresentations and omission harmed Plaintiff and Class Members. Plaintiff and Class Members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality of the Affected Vehicles.

87. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff' and California Subclass members' rights. Defendant's illegal and deceptive acts warrant an award of punitive damages in an amount sufficient to deter such unscrupulous conduct in the future.

88. Further, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class and California Subclass, respectfully requests that the Court enter judgment in their favor and against Volkswagen, as follows:

A.    Certification of the proposed Class and California Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.    An award of costs and attorneys' fees; and

1       G.     Any other relief the Court may deem appropriate.

## XIII.   DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself, and all others similarly situated, hereby demands a jury trial for all claims so triable.

DATED:  September 21, 2015       GIRARDI | KEESE

                      THOMAS V. GIRARDI
                      ALEXANDRA T. STEELE

By: _____
       THOMAS V. GIRARDI
       ALEXANDRA T. STEELE
       Attorneys for PLAINTIFFS

CLASS ACTION COMPLAINT